SCOTT J. WALFORD,

               Petitioner,

-vs-                                          Case No.  6:09-cv-1298-Orl-19GJK
                                                        (6:07-cr-45-Orl-19GJK)

UNITED STATES OF AMERICA,

               Respondent.
_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Scott J. Walford (Doc. No. 1, filed July 27, 2009);

2.      Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Respondent United States of America (Doc. No. 5, filed Oct. 23, 2009); and

3.      Reply to Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Scott J. Walford (Doc. No. 7, filed Jan. 4, 2010).

## Background

On April 4, 2007, Petitioner was charged in an indictment with four counts of tax evasion in violation of 26 U.S.C. § 7201.  (Criminal Case No. 6:07-cr-45-Orl-19GJK, Doc. No. 1, filed Apr. 4, 2007.)[1]  A jury found Petitioner guilty of all four counts.  (Criminal Case Doc. No. 48, filed June

---

[1] Criminal Case No. 6:07-cr-45-Orl-19GJK will be referred to as "Criminal Case."

20, 2007.)  A sentencing hearing was conducted, and on September 17, 2007, the Court entered a

Judgment sentencing Petitioner to a 33-month term of imprisonment to be followed by a two-year

term of supervised release.  (Criminal Case Doc. No. 61 at 2-3, filed Sept. 19, 2007.)

Petitioner timely filed a notice of appeal.  (Criminal Case Doc. No. 62, filed Sept. 26, 2007.)

Petitioner argued on appeal that the Court unlawfully denied Petitioner's motion for a sixty-day

continuance of trial.  (Criminal Case Doc. No. 101 at 2-3, filed Nov. 6, 2008.)  The Eleventh Circuit

rejected Petitioner's argument and affirmed the conviction.  (*Id.* at 10.)

Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant

to 28 U.S.C. § 2255, asserting four grounds for relief:  (1) Petitioner unknowingly and involuntarily

waived his right to counsel; (2) the trial court permitted Petitioner's appointed counsel to represent

him at a hearing before resolving the outstanding motion to permit Petitioner's appointed counsel

to withdraw ("Motion to Withdraw"); (3) the trial court erred in sentencing Petitioner; and (4)

ineffective assistance of standby trial counsel and appellate counsel for failing to raise the first three

issues.  (Doc. No. 1 at 14-15.)   The Government responded in opposition, asserting that there was

no basis for an evidentiary hearing and that Petitioner's claims had no merit.   (Doc. No. 5.)

Petitioner filed a reply to the Government's response.  (Doc. No. 7.)

**Standard of Review**

**I.    Relief**

Section 2255 provides federal prisoners with an avenue for relief under limited

circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of

the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2009). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

## II.     Hearing

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

**Analysis**

## I.  Procedural Bar

The Government asserts that Petitioner is procedurally barred from claiming in this Motion that: (1) Petitioner unknowingly and involuntarily waived the right to counsel at trial; (2) the trial court unlawfully conducted a scheduling hearing before ruling on Petitioner's Motion to Withdraw; and (3) the trial court erred in sentencing Petitioner.  (Doc. No. 5 at 9.)

A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of (1) cause and prejudice or (2) a fundamental miscarriage of justice.  *See United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).  In order to show cause, a petitioner must show some external impediment preventing counsel from constructing or raising the claim.  *High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000).  "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel."  *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008).  Cause, however, does not exist where the injury is fairly attributable to a petitioner's own conduct.  *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999).  Prejudice exists where the alleged error actually and substantially disadvantaged Petitioner's defense so that he was denied fundamental fairness.  *Id.*  Stated differently, prejudice exists if there is at least a reasonable probability that the result of the proceeding would have been different had the alleged error not occurred.  *Mize*, 532 F.3d at 1190.  Absent cause and prejudice, the procedural default of a

-4-

constitutional claim may be excused only if enforcing the default would result in a fundamental miscarriage of justice. *Id.* This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner asserts that his standby trial counsel and his appellate counsel were ineffective for failing to raise the three issues claimed by the Government to be procedurally barred. (Doc. No. 1 at 14-15; Doc. No. 7 at 13-16, 19.) If in fact Petitioner's counsel was ineffective for failing to raise an issue and if the failure to raise that issue prejudiced Petitioner, there would be cause and prejudice to excuse Petitioner's procedural default of that issue. *Mize*, 532 F.3d at 1190. Thus, the Court must assess Petitioner's claims of ineffective assistance of standby trial counsel and appellate counsel to determine whether Petitioner procedurally defaulted his claims that: (1) he unknowingly and involuntarily waived the right to counsel at trial; (2) the trial court unlawfully conducted a scheduling hearing before ruling on Petitioner's Motion to Withdraw; and (3) the trial court erred in sentencing Petitioner.

## II. Ineffective Assistance of Standby Trial Counsel and Appellate Counsel

A successful claim of ineffective assistance of counsel requires the Petitioner to show that: (1) "counsel's representation fell below an objective standard of reasonableness;" and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (noting that the *Strickland* standard for ineffective assistance of trial counsel also applies to claims of ineffective assistance of appellate counsel). These two elements are commonly referred to as the performance and prejudice prongs,

respectively. *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). If the Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

As to the performance prong, courts must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989). As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (internal citations omitted).

As to the prejudice prong, Petitioner has the burden of proving that he was prejudiced by trial counsel's allegedly deficient performance. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000). That an error had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice. *Id.* Instead, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). Thus, counsel's failure to bring

a meritless issue cannot prejudice a client. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *Cross v. United States*, 893 F.2d 1287, 1289-92 (11th Cir. 1990). Accordingly, the Court turns to the merits of each of Petitioner's three claims to determine if he was prejudiced by his standby trial and appellate counsel's alleged failure to raise the claims.

### A. Waiver of Right to Counsel

On May 17, 2007, Petitioner filed a motion for his counsel to withdraw and to proceed *pro se*. (Criminal Case Doc. No. 20, filed May 17, 2007.) On May 25, 2007, Magistrate Judge Karla R. Spaulding held a *Faretta* hearing[2] to ensure that Petitioner knowingly and voluntarily waived his right to counsel, and the Magistrate entered an Order granting Petitioner's Motion to Withdraw. (Criminal Case Doc. Nos. 24-25.)

Petitioner argues that his standby trial and appellate counsel should have objected to Petitioner's waiver of the right to counsel because the Magistrate did not sufficiently inquire into whether Petitioner knowingly, intelligently, and voluntarily waived that right during the *Faretta* hearing. (Doc. No. 1 at 14; Doc. No. 7 at 2-10.) The Government asserts in response that this claim is without merit, and thus both standby trial counsel and appellate counsel were not ineffective for failing to raise the issue. (Doc. No. 5 at 11.)

"A defendant in a criminal trial has a constitutional right to proceed without counsel when he knowingly, voluntarily, and intelligently elects to do so." *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995) (citing *Faretta v. California*, 422 U.S. 806, 833-36 (1975)). "To satisfy itself

---

[2] "The ideal method of assuring that a waiver is valid is for the trial court to conduct a pretrial hearing at which the accused is informed of the charges, basic trial procedures, and hazards of self-representation." *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995). While a pretrial hearing is preferred, it is not required. *Id.* Such a hearing is commonly referred to as a *Faretta* hearing. *See Faretta v. California*, 422 U.S. 806 (1975).

as to the validity of a waiver of the right to counsel, the trial court 'should do more than ask *pro forma* questions; it should explain the difficulties inherent in any criminal trial, including the importance of evidentiary rules.'" *Id.* (quoting *Strozier v. Newsome*, 871 F.2d 995, 997 n.4 (11th Cir. 1989)). "General questions are insufficient; the court must inform the defendant of charges, included offenses and possible range of punishment." *Id.*

Eight factors should be considered in determining whether a record establishes a knowing, voluntary, and intelligent waiver: (1) the defendant's age, educational background, and physical and mental health; (2) the extent of the defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of the trial. *Id.* at 1088-89 (citing *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1065-67 (11th Cir. 1986)). Whether there has been an adequate waiver of the constitutional right to counsel depends upon the particular facts and circumstances of each case, and not all of the eight factors need to point in the same direction for a court to conclude that the defendant knowingly and voluntarily waived the right to counsel. *Id.* at 1089. With this standard in mind, the Court turns to the inquiry conducted by the Magistrate during the *Faretta* hearing in this case.

### 1.  Petitioner's Age, Educational Background, and Physical and Mental Health

As to the first factor, the Magistrate asked Petitioner and his counsel about Petitioner's age, educational background, and physical and mental health:

THE COURT: All right. Then let me ask you a few questions about yourself. How old are you?

THE DEFENDANT:[3] Is that not already a matter of public record?

THE COURT: . . . I don't have it.

THE DEFENDANT: Okay. I just assumed you had everything about me in there.

THE COURT: I know nothing about you other than the charge in the Indictment.

THE DEFENDANT: I'm 60 years old.

THE COURT: Okay. How far did you go in school?

THE DEFENDANT: Is that relevant to this?

THE COURT: It's a question of whether you have the capacity to waive your constitutional right.

THE DEFENDANT: I'm not sure that I want to answer any questions due to the fact that anything that I say can and . . . will be used against me.

THE COURT: Okay. Well, Mr. Walford, I can't make a finding that you knowingly, voluntarily, and intelligently waive your right to counsel if you won't answer my questions.

THE DEFENDANT: Then I agree to answer some of them.

THE COURT: Okay. Well, we'll see whether you'll answer enough of them so that I can make the determination. How far did you go in school?

THE DEFENDANT: Ninth grade.

THE COURT: All right. Do you read, speak, and understand English?

---

[3] Petitioner does not dispute the veracity of any statements in the record. Thus, his statements in the record are presumed true. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

THE DEFENDANT: Correct.

THE COURT: Okay. . . . Have you ever been found not competent to handle your own affairs by any court or administrative body?

THE DEFENDANT: Absolutely not.

THE COURT: Okay. Are you currently suffering from any kind of – I don't need the specifics, but mental, physical, or emotional issues that are interfering with your ability to think clearly?

THE DEFENDANT: Absolutely not.

THE COURT: All right. Mr. Counts, have you talked with Mr. Walford enough during the time of your representation to have an opinion regarding his competency?

MR. COUNTS: I have no indication, Your Honor, that he is incompetent.

THE COURT: Okay. All right. Does the United States?

MS. HO: I do not, Your Honor.

(Criminal Case Doc. No. 88 at 5-7, filed Nov. 19, 2007.) Petitioner's age and mental competency did not prevent him from knowingly and voluntarily waiving his right to counsel. Further, Petitioner's calculated responses to the Magistrate's questions showed that despite having only a ninth grade education he possessed sufficient intelligence to knowingly waive his right to counsel.

## 2. The Extent of Petitioner's Contact with Lawyers Prior to Trial

As to the second factor, the Magistrate explored the extent of Petitioner's contact with lawyers prior to trial:

THE COURT: . . . [H]ave you had a chance to talk with Mr. Counts about th[e] Sixth Amendment Right to Counsel?

THE DEFENDANT: I chose not to.

THE COURT: You chose not to talk with him about it?

THE DEFENDANT: That's correct.

> THE COURT: Have you studied into it yourself, so you believe you understand that right?
>
> THE DEFENDANT: Yes, I do.

(*Id.* at 4-5.) Petitioner does not cite, and the Court has not found, any authority that Petitioner's voluntary decision not to speak with his appointed counsel about his Sixth Amendment Right to Counsel, without more, supports the conclusion that Petitioner unknowingly or involuntarily waived the right to counsel. In any case, Petitioner acknowledged during the *Faretta* hearing that he unsuccessfully attempted to retain private counsel who "understood" the jurisdictional defenses he sought to assert. (*Id.* at 2-3.) This contact with private attorneys, although not amounting to representation, supported the conclusion that Petitioner knowingly and voluntarily waived the right to counsel. *See Fitzpatrick*, 800 F.2d at 1066 (noting that through the defendant's contact with attorneys that he was not able to retain, "he must have recognized that his case was more complex than he originally thought" and that such contact must have given the defendant "some indication of the difficulty of self-representation in his particular case").

### 3. Petitioner's Knowledge of the Charges, Defenses, and Penalties

As to the third factor, the Magistrate ensured that Petitioner understood the nature of charges, possible defenses, and penalties he faced:

> THE COURT: All right. Ms. Ho, can you tell me generally what the penalties are Mr. Walford faces if he's convicted in this case?
>
> MS. HO: Your Honor, each count is punishable by a maximum term of imprisonment of five years, a maximum fine of $250,000, and a maximum term of supervised release of three years.
>
> THE COURT: All right. So, Mr. Walford, you understand you're facing felony offenses and that they carry these possible maximum penalties?

THE DEFENDANT: I understand that if I was charged with a crime and was convicted of it, yes.

THE COURT: Okay. And you understand that if the Court finds that you are validly charged with a crime and you are convicted of those crimes, that the Court could impose those sentences consecutively, meaning adding one on top of the other . . . ?

THE DEFENDANT: Uh-huh.
. . .
THE COURT: . . . Mr. Walford, you've had a change to read the Indictment in this case many times?

THE DEFENDANT: . . . I've read it. The Indictment is really irrelevant on what we're here for today. This case is never going to trial anyhow.
. . .
THE COURT: What do you understand the government to be attempting to charge you with?

THE DEFENDANT: They have – actually, it's not real clear. It wasn't even clear on the warrant, but they're attempting to charge me with some type of crime.

THE COURT: [States a summary the Indictment.] . . . So what is your understanding of what they are attempting to charge you with?

THE DEFENDANT: Well, whatever they're attempting to charge me –

THE COURT: No. What is your understanding of what they're attempting to charge you with?

THE DEFENDANT: They're attempting to charge me with some type of crime.

THE COURT: Mr. Walford, until you can articulate for me what the alleged crime is, I'm not able to find that you are understanding.

THE DEFENDANT: The alleged crime is that I willfully, okay, withheld information and funds from the federal government.

(*Id.* at 8-9, 12-14.) Petitioner's responses to the Magistrate's questions showed that he understood

the nature of charges and the penalties he faced. Petitioner correctly points out that the Magistrate

did not discuss any of the possible defenses available to Petitioner. (Doc. No. 7 at 5.) However,

Petitioner does not cite, and the Court has not found, any authority that the absence of a discussion of possible defenses is weighed more heavily in the analysis than any other factor. Rather, in *Iowa v. Tovar*, 541 U.S. 77 (2004), the Supreme Court noted that admonishing a defendant about possible defenses is not constitutionally required so long as the waiver of counsel is knowing, intelligent, and voluntary under the totality of the circumstances. *Id.* at 92-93. Moreover, Petitioner was aware of some of his defenses, as he told the Magistrate on a number of occasions that he planned to file a motion to dismiss the indictment for lack of jurisdiction. (Criminal Case Doc. No. 88 at 2-3, 9-10.) Thus, the Magistrate's conclusion that Petitioner knowingly, voluntarily, and intelligently waived the right to counsel was supported by his knowledge of the charges against him, the possible penalties, and some of the defenses available to him.

### 4. Petitioner's Understanding of Legal Rules and Courtroom Decorum

As to the fourth factor, the Magistrate inquired into Petitioner's understanding of rules of procedure, evidence, and courtroom decorum:

> THE COURT: All right. Are you generally familiar with the Federal Rules of Criminal Procedure?
>
> THE DEFENDANT: Yes, I am.
>
> THE COURT: All right. And you understand that they will govern how the case proceeds in this court?
>
> THE DEFENDANT: Correct.
> . . .
> THE COURT: . . . And do you understand that if you represent yourself, basically you're on your own? You will be examining witnesses, making arguments on motions, filing motions, filing responses, being responsible for abiding by the deadlines established by the Court and by the rules?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Okay. Are you familiar with the Federal Rules of Evidence?

THE DEFENDANT: Yes, I am.

THE COURT: Okay.

THE DEFENDANT: As I stated, I'm going to make some challenges myself.

THE COURT: Yes.

THE DEFENDANT: I don't believe the prosecutor has made jurisdiction to appear on the record in this case even.

(*Id.* at 8-10.) Petitioner argues that the Magistrate's questioning was deficient because she did not make Petitioner "understand that in reality he had no familiarity with the Federal Rules of Evidence." (Doc. No. 7 at 6.) Petitioner does not cite, and the Court has not found, any authority requiring the Magistrate to have conducted a searching inquiry into Petitioner's understanding of the Federal Rules of Evidence or Criminal Procedure. Rather, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Faretta*, 422 U.S. at 835. In any case, Petitioner's now asserted unfamiliarity with the Federal Rules of Evidence directly contradicts his statement to the Magistrate on that very issue, and Petitioner offers no reason why his statement to the Magistrate was untruthful. *See supra* note 3. Accordingly, the Magistrate's inquiry into Petitioner's understanding of rules of procedure, evidence, and courtroom decorum supported the finding that Petitioner knowingly, intelligently, and voluntarily waived his right to counsel.

### 5. Petitioner's Experience with Criminal Trials

As to the fifth factor, the Magistrate inquired into Petitioner's prior experience with criminal trials:

THE COURT: Now let me ask you a little bit about your knowledge of criminal proceeding[s]. First, have you ever formally studied law anywhere?

THE DEFENDANT: No.

THE COURT: But you've done some self-study, I can tell that.

THE DEFENDANT: Very much.

THE COURT: Okay. Have you ever represented yourself in any kind of a proceeding, civil, criminal, or otherwise?

THE DEFENDANT: Yes, I have.

THE COURT: Okay. You don't have to tell me what the cases were, but were they civil, were they criminal, were they administrative?

THE DEFENDANT: And this question is for what purpose?

THE COURT: To determine whether you understand what the responsibilities will be that you will undertake if you represent yourself.

THE DEFENDANT: I understand those responsibilities.

THE COURT: No. You have to answer my question. Have you ever represented – what kind of a proceeding did you represent yourself in, civil, criminal, or administrative?

THE DEFENDANT: Both.

THE COURT: Civil and criminal?

THE DEFENDANT: Correct.

THE COURT: All right. Federal or state?

THE DEFENDANT: Both.

(Criminal Case Doc. No. 88 at 7-8.) Petitioner asserts that he mistakenly told the Magistrate that he had previously represented himself in a criminal proceeding. (Doc. No. 2 at 7.) Even so, Petitioner does not dispute his other responses to the Magistrate, and thus Petitioner had some prior court experience and had undertaken some self-study of the law. Assuming Petitioner's allegations to be true, this factor is neutral in the analysis.

### 6. Appointment of Standby Counsel

Petitioner was appointed standby counsel, and such counsel was present for all of the proceedings in this case. (*See* Criminal Case Doc. Nos. 83-85.) During the *Faretta* hearing, Petitioner objected to the appointment of standby counsel and acknowledged that his standby counsel had no duty to act on his behalf during the trial and would only offer advice upon his request:

> THE COURT: All right. Mr. Walford, the motion for Mr. Counts to withdraw as appointed counsel is granted. The Office of the Federal Public Defender will continue to be standby counsel in this case. What that means is you can act on your own behalf. You don't have to talk to Mr. Counts or his office ever again if you don't want to, but they will be available. Mr. Counts will be available to you to ask questions of him, should you choose to do that.
>
> Mr. Counts is not and the Office of the Federal Public Defender is not, however, stand-by counsel for purposes of acting on your behalf during the case. So, as I've said, your obligation to file motions, your obligation to file responses, your obligation to appear before the Court and make argument, but we will have – and let me tell you why I do that, because I suspect you don't like that decision, but it's going to happen anyway.
>
> THE DEFENDANT: You're correct, Your Honor. I prefer not to have stand-by counsel at all. Thank you.
>
> THE COURT: Well, you're going to have stand-by counsel . . . . What procedural questions, if any, do you have about how things are going to go forward from this point?
>
> THE DEFENDANT: None, Your Honor.

(Criminal Case Doc. No. 88 at 15-17.) Thus, the appointment of standby counsel and Petitioner's understanding of the limited functions of standby counsel supported the Magistrate's finding of a knowing, intelligent, and voluntary waiver of the right to counsel.

### 7. Presence of Coercion or Mistreatment

As to the seventh factor, Petitioner asserts that he was coerced into waiving the right to counsel because his appointed counsel never advised him of the right to have an expert witness testify in his defense. (Doc. No. 7 at 19, 52.) Petitioner does not cite, and the Court has not found, any authority supporting the proposition that the failure of appointed counsel to give legal advice relating to the use of expert testimony, without more, may have a coercive effect on a defendant's decision to waive the right to counsel. In any case, Petitioner acknowledged during the *Faretta* hearing that his appointed counsel, once converted to standby counsel, had no duty to act on his behalf during the trial and would only offer advice upon his request. (Criminal Case Doc. No. 88 at 15-16.) Petitioner also insisted during the *Faretta* hearing that the reflect that he did not want standby counsel appointed in his case, (*Id.* at 16), although Petitioner conferred with standby counsel throughout the trial. (*See* Criminal Case Doc. No. 83 at 13 (noting that standby counsel had been advising Petitioner during the trial).) In addition, Petitioner acknowledged during the *Faretta* hearing that he was voluntarily waiving his right to counsel:

> THE COURT: Okay. Is your decision to give up your right to counsel voluntarily made?
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: Do you have any questions you want to ask me about the decision to give up your right to counsel?
>
> THE DEFENDANT: No.

(Criminal Case Doc. No. 88 at 10-11.) In light of Petitioner's unchallenged statements in the record, Petitioner's allegations, even if true, do not show that he was mistreated or coerced into waiving his right to counsel.

### 8. Manipulation of Court Proceedings

As to the eighth factor, it cannot be concluded that Petitioner was trying to manipulate the events of the trial because he moved to proceed *pro se* over a month prior to trial. (Criminal Case Doc. No. 20.) Petitioner acknowledged during the *Faretta* hearing that if he was allowed to proceed *pro se*, the trial would commence as scheduled. (Criminal Case Doc. No. 88 at 4.) Thus, this factor is neutral in the analysis.

In summary, the Magistrate conducted a thorough and comprehensive *Faretta* hearing by asking Petitioner questions touching each of the factors enumerated in *Cash*. In light of Petitioner's responses to those questions, the Magistrate correctly determined that Petitioner knowingly, intelligently, and voluntarily waived his right to counsel. Petitioner does not allege any facts in the instant Motion which, if true, would affect that result. Accordingly, Petitioner was not prejudiced by his counsel's failure to argue that he unknowingly or involuntarily waived the right to counsel, and thus there was no ineffective assistance of counsel for failing to raise the claim. For the same reasons, the claim is procedurally barred. *See supra* part I.

### B. Conducting a Scheduling Hearing Before Ruling on the Motion to Withdraw

On April 5, 2007, the Court entered a scheduling order setting Petitioner's criminal case for the trial term commencing June 4, 2007. (Criminal Case Doc. No. 8 at 7.) On May 17, 2007, shortly before the scheduling conference for the June 4, 2007 trial term, Petitioner filed a Motion to Withdraw, asking the Court to permit Petitioner's appointed trial counsel to withdraw and to allow Petitioner to proceed *pro se*. (Criminal Case Doc. No. 20.) At the scheduling conference held on May 22, 2007, the Court granted the Government's request not to commence the trial during the first two weeks of June, and the Court set the trial to commence on June 18, 2007. (Criminal Case

Doc. No. 92 at 3-4, filed Nov. 21, 2007.)  On May 25, 2007, three days after the scheduling conference, the Court conducted a *Faretta* hearing on the Motion to Withdraw. (Criminal Case Doc. Nos. 24, 88.)

Petitioner maintains that his appointed counsel and appellate counsel were ineffective for failing to assert that the Court unlawfully permitted Petitioner's appointed trial counsel to represent him at a scheduling hearing before ruling on the Motion to Withdraw. (Doc. No. 1 at 14.) Petitioner contends that he was prejudiced by the Court setting the trial for June 18 at the scheduling hearing prior to conducting a hearing on the Motion to Withdraw because Petitioner had no opportunity to argue during the scheduling hearing that the June 18 trial date did not give him sufficient time to prepare his case.[4] (Doc. No. 7 at 13.)  The Government argues in response that Petitioner's standby counsel and appellate counsel were not ineffective for failing to raise this issue because the issue is without merit.  (Doc. No. 5 at 10-11.)

Petitioner does not cite, and the Court has not found, any authority requiring a Court to resolve a pending motion to withdraw before conducting a scheduling hearing and setting a trial date.  Rather, the decision whether to hold a pretrial conference is a matter within the Court's discretion and a component of the Court's inherent power to manage the litigation before it.  Fed. R. Crim. P. 17.1; *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).  In any case, assuming, *arguendo*, that the Court improperly conducted a pretrial conference before ruling on the pending Motion to Withdraw, Petitioner suffered no prejudice from this error.  On April 5, 2007,

---

[4] After his appointed counsel was permitted to withdraw, Petitioner filed two Motions to Continue. (Criminal Case Doc. Nos. 29, 31.)  The Court entered Orders denying both Motions to Continue, (Criminal Case Doc. Nos. 30, 34), and Petitioner unsuccessfully challenged those Orders on appeal.  (Doc. No. 101.)  Petitioner does not challenge those Orders in the instant Motion.

the Court entered a scheduling order setting Petitioner's criminal case for the trial term commencing June 4, 2007. (Criminal Case Doc. No. 8 at 7.) This scheduling order notified Petitioner that his trial could commence as early as June 4. When the Court set the trial to commence on June 18, 2007, the Court gave Petitioner more time to prepare his case than what was initially ordered. In addition, Petitioner filed two Motions for Continuance after the Court granted his Motion to Withdraw and allowed him to proceed *pro se*. (Criminal Case Doc. Nos. 29, 31.) As a result, Petitioner was not prejudiced by his standby and appellate counsel's failure to argue that the Court improperly conducted the scheduling conference before ruling on the Motion to Withdraw. Absent any prejudice to Petitioner, there was no ineffective assistance of counsel, and Petitioner's claim that the Court unlawfully conducted the scheduling conference pending the Motion to Withdraw is procedurally barred. *See supra* part I.

### C. Sentencing Errors

Petitioner asserts a number of errors in his sentencing and maintains that his standby counsel and appellate counsel were ineffective for failing to raise those issues. As discussed below, each sentencing error asserted by Petitioner is without merit, and thus Petitioner's counsel was not ineffective for failing to raise the sentencing issues, and Petitioner is procedurally barred from collaterally challenging his sentence.

#### 1. Use of the 2006 Guidelines Manual

Petitioner asserts that the Court improperly sentenced Petitioner using the 2006 edition of the Guidelines Manual, which caused Petitioner to be sentenced based upon a guideline range not in effect at the time the alleged offense was committed. (Doc. No. 1 at 14.) Petitioner argues that

he should have been sentenced using the 2003 Guidelines Manual because the "last charged conduct was in 2003." (Doc. No. 7 at 17.)

"A defendant is sentenced using the Guidelines Manual in effect at the time of sentencing, unless this would raise ex post facto concerns, in which case the defendant is sentenced using the Guidelines Manual in effect at the time the crime was committed." *United States v. Aviles*, 518 F.3d 1228, 1230 (11th Cir. 2008). Applying a guideline provision enacted after a defendant's conduct that disadvantages the defendant violates the Ex Post Facto Clause. *United States v. Robinson*, 935 F.2d 201, 204 (11th Cir. 1991). Application of the 2006, rather than 2003, Sentencing Guidelines did not violate the ex post facto clause because the 2003 Sentencing Guidelines pertinent to Petitioner's offenses of conviction are identical to the 2006 Sentencing Guidelines applied to sentence Petitioner. *Compare* U.S.S.G. § 2T4.1 (2003), *with* U.S.S.G. § 2T4.1 (2006). Accordingly, Petitioner was lawfully sentenced on September 17, 2007, using the 2006 Guidelines Manual which took effect on November 1, 2006. *See, e.g.*, *United States v. King*, 306 F. App'x 501, 518 (11th Cir. 2009); *United States v. Troupe*, 240 F. App'x 849, 852 n.1 (11th Cir. 2007).

### 2. Sentencing Petitioner to the Wrong Loss Range

Petitioner argues that the Court sentenced Petitioner "using a loss range in excess of $200,000 when the proper range was below $200,000" because the Government offered no proof that Petitioner had approximately $12,307.86[5] in capital gains from the sales of stock from 2000 through 2003. (Doc. No. 1 at 14; Doc. No. 7 at 17, 52.) In particular, Petitioner argues that

---

[5] The PSR attributed to Petitioner capital gains from the sale of stock of $5,087.60 in 2000, $5,204.21 in 2001, $1,266.00 in 2002, and $750.05 in 2003, for a total of $12,307.86 in capital gains. (PSR ¶¶ 11-14.) Over those same years, the PSR attributed to Petitioner an adjusted gross income, excluding capital gains from the sale of stock, of $226,292.48 in 2000, $72,786.57 in 2001, $43,659.52 in 2002, and $52,941.86 in 2003. (*Id.*)

$12,307.86 represents the proceeds from selling the stock, not the taxable gain realized from the stock sales. (Doc. No. 7 at 17.)

Petitioner did not object to the factual findings contained in the Presentence Investigation Report ("PSR") at the time of sentencing, and the Court adopted those factual findings in sentencing Petitioner. (Criminal Case. Doc. No. 94 at 11, filed Nov. 21, 2007.) The total tax loss attributed to Petitioner in the PSR was $206,259.77,[6] and he was attributed a base offense level of 18 for a tax loss of more than $200,000 but not more than $400,000. (PSR ¶¶ 16, 21.) Accordingly, if a tax loss of $6,259.77 or more from sales of stock was incorrectly attributed to Petitioner in the PSR, the tax loss would have been $200,000 or less, and Petitioner would have been sentenced using the incorrect base offense level. *See* U.S.S.G. § 2T4.1(F)-(G) (2006) (setting a base offense level of 16 for a tax loss of more than $80,000 and a base offense level of 18 for a tax loss of more than $200,000).

Petitioner does not allege his basis in the stock sales used to calculate the tax loss, and as a result the Court is unable to determine the precise amount of tax loss, if any, incorrectly attributed to Petitioner in the PSR. However, the Court will assume, *arguendo*, the parameters resulting in the largest tax loss that could have been incorrectly attributed to Petitioner in the PSR. Thus, the Court assumes for the sake of analysis that Petitioner had no taxable gain from the stock sales used in computing the tax loss, instead of $12,307.86 as reflected in the PSR. (PSR ¶¶ 11-14.) Further, the Court assumes for the sake of analysis that the tax loss in the PSR was computed by considering the

_____

[6] The Guidelines instruct that unless a more accurate determination of the tax loss can be made, the tax loss is equal to 28% of the unreported gross income. U.S.S.G. § 2T1.1(c)(1)(A) (2006); *see also id.*, Application Note 1 (noting that the 28% presumption is only to be used when the government or defense is unable to provide sufficient information for a more accurate assessment of the tax loss). Petitioner does not dispute the fact that the PSR calculates the applicable tax losses using a method other than the 28% presumption.

stock sales as short-term capital gains taxed as ordinary income each year at the applicable marginal rate for an married individual filing separately,[7] which would have resulted in a tax loss of $4,129.68.[8]    Thus, Petitioner's base offense level would not have changed even if the PSR computed the tax loss by incorrectly attributing to Petitioner $12,307.86 in capital gains from the sale of stock.

### 3.  Sentencing For Unpaid Taxes Barred by the Statute of Limitations

Petitioner asserts that the Court improperly calculated Petitioner's base offense level by considering tax losses that were barred by the applicable statute of limitations.  (Doc. No. 7 at 18.)

For assessments of tax or levy made after November 5, 1990, a proceeding in court to collect the tax may be commenced, or a levy to collect the tax may be made, within 10 years after the date of assessment.  26 U.S.C. § 6502(a)(1); 26 C.F.R. § 301.6502-1(a).  However, conduct that took

---

[7] These assumptions result in the highest tax loss and thus the highest amount of tax that could have been incorrectly attributed to Petitioner.  The gain from a sale of stock is taxed at the favorable capital gains tax rates set forth in 26 U.S.C. § 1(h) if the sale results in a "net capital gain," which is defined as the excess of "net long-term capital gain" over the net short-term capital loss. *See* 26 U.S.C. § 1(h)(i); 26 U.S.C. § 1222(11).  To have a "net long-term capital gain" from the sale of stock, the taxpayer must have held the stock for more than one year.  *See* 26 U.S.C. § 1222(3), (7). If the stock is held for one year or less, any gain is considered a short-term capital gain, 26 U.S.C. § 1222(1), which is taxed as ordinary income pursuant to 26 U.S.C. § 64.  Because the tax rates for ordinary income are higher than the tax rates for capital gains under 26 U.S.C. § 1(h), the highest tax liability results from treating the sales of stock as short-term capital gains. *Compare* 26 U.S.C. § 1(c), *with* 26 U.S.C. § 1(h).

[8] The applicable marginal tax rate depends upon Petitioner's taxable income in a given year, 26 U.S.C. § 1, which for purposes of this calculation is presumed to be equal the adjusted gross income.  Any difference between Petitioner's adjusted gross income and taxable income due to deductions would only decrease the tax incorrectly attributed to Petitioner from the capital gains. *See* 26 U.S.C. § 63 ("[T]he term 'taxable income' means gross income minus the deductions allowed by this chapter . . . .")  Thus, the highest amount of tax that could have been attributed to Petitioner for the $12,307.86 in capital gains is $5,087.60 * 39.6% + $5,204.21 * 30.5% + $1,266.00 * 27% + $750.05 * 25%, for a total of $4,129.68.  *See* 26 U.S.C. § 1(c), (f), (i)(2), (i)(3) (setting forth the applicable marginal tax rates for the years 2000-2003).

place outside a relevant statute of limitations period may be factored into the loss calculation for sentencing purposes. *United States v. Behr*, 93 F.3d 764, 765-66 (11th Cir. 1996). Accordingly, the Court lawfully considered tax losses from 1986 through 2003 in determining Petitioner's base offense level. (PSR ¶¶ 11-16.)

### 4. Restitution Ordered Beyond Offenses of Conviction

Petitioner argues that the Court unlawfully ordered restitution in an amount greater than tax loss caused by the offenses for which he was indicted and convicted in violation of *United States v. Taylor*, 305 F.2d 183, 187 (4th Cir. 1962). (Doc. No. 1 at 15; Doc. No. 7 at 18 n.7.) The Court need not decide whether *Taylor* applies here[9] because the Court ordered restitution in the amount of $272,005.96 based on Petitioner's tax liability from the years 2000 through 2003 in the amount of $93,577.00 plus $178,428.96 in interest and penalties. (PSR ¶ 72.) Thus, even if the Court could lawfully impose restitution only for the tax losses caused by the offenses of conviction, the Court complied with that rule, and Petitioner's argument is without merit.

### Conclusion

Based on the foregoing, the Court finds that Petitioner is not entitled to a hearing because his claims are either facially deficient or affirmatively contradicted by the record. Petitioner has not demonstrated that he is entitled to relief on any of the claims he has raised. Any allegations not specifically addressed herein have been found to be without merit.

---

[9] The rule in *Taylor* relied upon by Petitioner is a restatement of 18 U.S.C. § 3651 (1985), which provided, *inter alia*, that a person convicted of a crime "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." That statute was repealed on November 1, 1987, and it does not apply to offenses committed after that date. *See United States v. Holland*, 874 F.2d 1470, 1472 n.1 (11th Cir. 1989).

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.  The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody by Petitioner Scott J. Walford (Doc. No. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

2.  The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.  The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:07-cr-45-Orl-19GJK and to terminate the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Criminal Case Doc. No. 105) pending in that case.

4.  This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[10] Accordingly, a Certificate of Appealability is **DENIED** in this case.

---

[10] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*,

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

Rules Governing § 2255 Proceedings, Rule 11.

Dated this day of March 5, 2010 in Orlando, Florida.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Scott J. Walford
Counsel of Record